**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **JOHN CHARLES SPURLOCK,** | § | |
| **PETITIONER,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:05-CV-0146-Y** |
| | § | |
| **DOUGLAS DRETKE, DIRECTOR,** | § | |
| **TEXAS DEPARTMENT OF CRIMINAL** | § | |
| **JUSTICE, CORRECTIONAL INSTITUTIONS** | § | |
| **DIVISION,** | § | |
| **RESPONDENT.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND NOTICE AND ORDER**

This cause of action was referred to the United States Magistrate Judge pursuant to the

provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for

the Northern District of Texas.  The findings, conclusions, and recommendation of the United States

Magistrate Judge are as follows:

## I.  FINDINGS AND CONCLUSIONS

### A.  NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

### B.  PARTIES

Petitioner John Charles Spurlock, TDCJ-CID #741571, is in custody of the Texas

Department of Criminal Justice, Correctional Institutions Division, in Gatesville, Texas.

Respondent Douglas Dretke is the Director of the Texas Department of Criminal Justice,

Correctional Institutions Division (TDCJ).

### C.  FACTUAL AND PROCEDURAL HISTORY

On February 13, 1996, pursuant to a plea agreement, Spurlock pled guilty to aggravated

sexual assault of a child younger than 14 years of age in the 355th Judicial District Court of Hood County, Texas, and was sentenced to fifteen years' confinement.  (1State Habeas R. at 163.[1]) Spurlock did not directly appeal his conviction.  Over two years later, on February 23, 1998, he filed a state habeas application challenging his conviction on substantive grounds, which was denied without written order on the findings of the trial court by the Texas Court of Criminal Appeals on May 27, 1998.  (1State Habeas R. at cover.)  On June 29, 1998, Spurlock filed a second state habeas application challenging his conviction, which was dismissed as successive by the Court of Criminal Appeals on September 16, 1998.  (2State Habeas R. at cover.)  Thereafter, on October 19, 1998, Spurlock filed his first federal petition attacking his conviction, which was dismissed on limitations grounds on January 5, 1999.  *See* CM/ECF, Civil Docket for Case # 4:98-CV-926, docket entry for January 5, 1999.

On March 27, 2003, Spurlock filed a motion for forensic DNA testing under chapter 64 of the Texas Code of Criminal Procedure in the state trial court.  (Clerk's R. at 20.)  The trial court denied the motion on rehearing on June 18, 2003.  (*Id.* at 34-35.)  The Second District Court of Appeals affirmed the trial court's order of denial on January 22, 2004, and, on July 28, 2004, the Court of Criminal Appeals denied Spurlock's petition for discretionary review.  *Spurlock v. Texas*, No. 2-03-269-CR, slip op. (Tex. App.–Fort Worth Jan. 22, 2004) (not designated for publication); *Spurlock v. Texas*, PDR No. 460-04.  Spurlock filed a third state habeas application on December 3, 2004, raising the issues presented herein, which was denied without written order on January 26,

---

[1]"1State Habeas R." refers to the trial court record for Spurlock's state habeas application no. 37,328-01; "2State Habeas R." refers to the trial court record for his state habeas application no. 37,328-02; "3State Habeas R." refers to the trial court record for his state habeas application no. 37,328-03.

2005.  (3State Habeas R. at cover.)  He filed this federal petition on February 22, 2005.[2]

## D.  ISSUES

Spurlock raises five grounds containing numerous claims, both logical and illogical.  The discussion below is an attempt to address the primary points and arguments he appears to make. (Petition at 7-8B.)

## E.  RULE 5 STATEMENT

Dretke believes that Spurlock has exhausted his available state remedies with regard to the issues raised as required by 28 U.S.C. § 2254(b)(1)(a) and does not move for dismissal on exhaustion grounds.  (Resp't Answer at 4.)  Instead, Dretke argues that Spurlock's claims are successive and/or time-barred.  (*Id.* 4-16.)

## F.  STATUTE OF LIMITATIONS

28 U.S.C. § 2244(d) imposes a one-year statute of limitations for filing a petition for federal habeas corpus relief.  28 U.S.C. § 2244(d).[3]  Section 2244(d) provides:

> (1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–
>
> > (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

---

[2]A pro se habeas petition is filed when the petition is delivered to prison authorities for mailing.  *Spotville v. Cain*, 149 F.3d 374, 377 (5th Cir. 1998).

[3]Spurlock, in an apparent effort to circumvent the statute of limitations, attempts to recharacterize his § 2254 as a habeas action under § 2241.  (Pet'r Response at 11.)  Spurlock's claims, however, are properly brought under § 2254.  *See Whitehead v. Johnson*, 157 F.3d 384, 386 n.1 (5th Cir. 1998); *Story v. Collins*, 920 F.2d 1247, 1250 (5th Cir. 1991); *Palmer v. Tx. Bd. of Paroles*, 89 Fed. Appx. 857, 858, 2003 WL 22945694, at *1 (5th Cir. Dec. 10, 2003) (not designated for publication in the Federal Reporter).

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1)-(2).

In his first ground, Spurlock complains that TDCJ is not considering good and work time credits to calculate time served on his sentence due to the nature of his crime. (Petition at 7, 8A; Pet'r Memorandum of Law at 1-5.) Under Texas law, the effect of a conviction for aggravated sexual assault of a child, a 3g offense, is to increase that portion of a prisoner's sentence which must be served before he becomes eligible for release on parole without consideration of good and work time credits. *See Ables v. Scott*, 73 F.3d 591, 593 n.3 (5th Cir. 1996) (*citing* former TEX. CODE CRIM. PROC. ANN. art. 42.18, § 8(b)(3), currently TEX. GOV'T CODE ANN. § 508.145(d) (Vernon 2004)).[4] According to Spurlock, with flat time plus good and work time, he has served over 100% of his sentence. Thus, he argues the law renders his good and work time credits ineffective in violation of his due process rights and, in contrast to inmates convicted of nonaggravated offenses, in

---

[4]At all times relevant to Spurlock's case, he was ineligible for release to mandatory supervision by virtue of his conviction for a 3g offense.

violation of his equal protection rights.  (Petition at 7.)

The statutory provision set forth in subsection (D) governs when the limitations period began to run as to this claim, *viz*, the date on which Spurlock could have discovered, through the exercise of due diligence, the factual predicate of his claim.  Spurlock contends that this claim could only be raised after the Texas Board of Pardons and Paroles (the Board) demonstrated that his time credits were not being considered.  (Pet'r Response at 5.)  Spurlock does not, however, indicate the date upon which the Board demonstrated this fact.  Nevertheless, as discussed below, the law in effect at the time of the offense specifically provided that a person convicted of aggravated sexual assault of a child is not eligible for parole until his actual calendar time served, without consideration of good conduct time, equals one-half of the maximum sentence or 30 years, whichever is less.[5]  Thus, Spurlock could have learned that he would have to serve at least half of his fifteen-year sentence without consideration of his good and work time credits on February 13, 1996, the date he was convicted and sentenced.  Accordingly, Spurlock had until April 24, 1997 to raise this claim in a federal habeas petition.  *See Flanagan v. Johnson*, 154 F.3d 196, 200-02 (5th Cir. 1998).  His state habeas applications filed after this date did not operate to toll the limitations period.  *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000).

Even if this claim were timely, as a matter of state law, good and work time credits apply only to *eligibility* for parole or mandatory supervision and do not actually reduce, extend, or otherwise have any effect on the length of sentence imposed on an inmate.  *See Ex parte Hallmark*, 883 S.W.2d 672, 674 (Tex. Crim. App. 1994); TEX. GOV'T CODE ANN. § 498.003(a) (Vernon 2004).

---

[5]Under Texas law, good time and work time credits are treated as good time credits. Tex. Gov't Code Ann. § 498.003(d) (Vernon 2004).

5

Consequently, any good or work time Spurlock has accrued does not discharge any part of his fifteen-year sentence.  A Texas inmate cannot compute his sentence by adding good and work time credits to the time he has actually served (flat time)–it merely reflects when he is *eligible* for parole or mandatory supervision, not that he is absolutely entitled to immediate release.  *See Vest v. Dretke*, No. 4:04-CV-174-Y, 2004 WL 1490104, at *2 (N.D. Tex. July 2, 2004), *adopted*, 2004 WL 1698838 (N.D. Tex. July 28, 2004); *Cordova v. Johnson*, No. 3:00-CV-1622-P, 2001 WL 493179, at *3 (N.D. Tex. May 8, 2001), *adopted*, 2001 WL 640792 (N.D. Tex. June 8, 2001).

In his second ground, Spurlock complains that TDCJ's denial of parole on September 24, 2003, based on the nature of the offense resulted in a double jeopardy violation.  In his third, he complains that the law in effect at the time he committed the offense, and not the date TDCJ shows he began his sentence on February 12, 1996, should control his eligibility for parole and the calculation of his time credits.  (Petition at 7-8; Pet'r Resp. at Exhibit 9.)  As with the previous claim, the statutory provision set forth in subsection (D) governs when the limitations period began to run as to these claims.

The indictment alleged that Spurlock committed the offense on or about June 6, 1995.  The parole law in effect at the time of the offense provided:

> If a prisoner is serving a sentence for the offenses listed in Subdivision (1)(A), (C), (D), (E), or (F) of Section 3g(a), Article 42.12 of this code, or if the judgment contains an affirmative finding under Subdivision (2) of Subsection (a) of Section 3g of that article, he is not eligible for release on parole until his actual calendar time served, without consideration of good conduct time, equals one-half of the maximum sentence or 30 calendar years, whichever is less, but in no event shall he be eligible for release on parole in less than two years.

Act of May 29, 1993, 73rd Leg. R.S. ch. 900, § 6.01, 1993 Tex. Gen. Laws 3589, 3764 (now TEX. GOV'T CODE ANN. § 508.145(d)).  Aggravated sexual assault is one of the offenses listed in Section

3g(a).  Therefore, Spurlock was eligible for parole after service of one-half of his fifteen-year sentence.  He has served more than one-half of his sentence and is parole eligible.  However, there is no federal constitutional right to be released on parole.  *See Board of Pardons v. Allen*, 482 U.S. 369, 378 n.10 (1987); *Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th Cir. 1995).  The statute merely provides for a discretionary release on parole once he served one-half of his sentence without considering good and work time credits.  Thereafter, the decision to grant parole was and remains within the discretion of the Board.  On September 24, 2003, the Board chose to deny Spurlock parole and listed the following reasons:

> The record indicates that the inmate committed one or more violent criminal acts indicating a conscious disregard for the lives, safety, or property of others; the instant offense or pattern of criminal activity has elements of brutality, violence, or conscious selection of victim's vulnerability such that the inmate poses an undue threat to the public; the record indicates use of a weapon.  (Pet'r Response, Exhibit 9.)

Any claim relevant to the Board's September 24, 2003 denial of parole and its standards for determining Spurlock's suitability for parole could have been discovered on that date.  (Pet'r Response, Exhibit 9.)  Thus, it was necessary for Spurlock to raise his claims regarding the September 24, 2003 denial in a federal petition on or before September 24, 2004, absent any applicable tolling.

Spurlock's time credit claims were also discoverable sooner.  He claims he is entitled to credit for time spent on pretrial release from June 9, 1995 through February 12, 1996.  The fact that he was not granted credit for that period of time was discoverable on February 13, 1996, the date of the plea proceeding and the trial court's judgment setting forth the time to be credited toward his sentence for pretrial incarceration.  (1State Habeas R. at 163.)  Moreover, there is no federal

constitutional right to credit for time served prior to sentence.[6]  *See Bayless v. Estelle*, 583 F.2d 730,

732 (5th Cir. 1978); *Gremillion v. Henderson*, 425 F.2d 1293, 1293-94 (5th Cir. 1970).  Spurlock

claims he is entitled to pretrial credit for June 9, 1995, rather than February 12, 1996, as shown by

TDCJ's time sheet calculation.  (Petition at 8.)  The factual predicate for this claim was discoverable

at least as early as July 16, 2002, as reflected by documentation presented by Spurlock himself in

the state habeas proceeding.  (2State Habeas R. at 17, 18.)  He sought a determination of the issue

through the prison's time credit dispute resolution process on August 13, 2002, and, on January 9,

2003, TDCJ concluded that there was no error in Spurlock's time credit calculations.  (3State Habeas

R. at 16.)  Tolling the limitations period during the pendency of the administrative proceeding,

Spurlock had until December 12, 2003, to raise this claim in a federal petition.

Spurlock's state habeas application(s) filed after limitations had expired in each instance did

not operate to toll the limitations period.  *See Scott*, 227 F.3d at 263.  Nor has he asserted valid

reasons for his failure to bring these claims in a timely manner so as to warrant tolling as a matter

of equity, which is available only in rare and exceptional circumstances when an extraordinary factor

beyond the petitioner's control prevents him from filing in a timely manner.  *See Davis v. Johnson*,

158 F.3d 806, 811 (5th Cir. 1998).  Thus, Spurlock's claims under grounds one, two, and three are

---

[6]There is an exception if the denial of credit for presentence confinement *in jail* effectively extends the total time served beyond the maximum prescribed sentence for the crime when the confinement is the result of an inmate's failure to make bail due to indigence.  It appears, however, that Spurlock was not in jail during the time he seeks credit, but was on pretrial release.  (Petition at 8.)  Regardless, Spurlock's sentence plus the time for which he seeks credit is less than the maximum prescribed sentence for his offense.  *See Parker v. Estelle*, 498 F.2d 625, 627 (5th Cir. 1974).  *See generally* TEX. PENAL CODE ANN. § 31.03 (Vernon Supp. 2004-05).

time-barred.[7]

### G.  SEX OFFENDER REGISTRATION

In his fourth ground, Spurlock complains that the requirement that he register as a sex offender for life based on state legislation enacted after he committed the offense violates various federal constitutional rights.  (Petition at 8.)  He appears to seek habeas relief and/or a prospective declaratory ruling that the amendments do not or will not apply to him upon his release.[8]  When Spurlock committed the offense, state statutory law required sex offender registration for offenders with a reportable conviction until the person was discharged from parole or probation.  *See* Act of May 26, 1991, 72nd Leg., R.S., ch. 572, § 1, 1991 Tex. Gen. Laws 2029, 2030.  Amendments to the state statutory provisions in 1997 imposed lifetime reporting requirements for certain offenses, including aggravated sexual assault.  *See* Act of June 1, 1997, 75th Leg., R.S., ch. 668 §§ 1, 11, 1997 Tex. Gen. Laws 2253, 2264.

Spurlock contends retroactive application of the amendments constitutes ex post facto and double jeopardy violations and cruel and unusual punishment.  (Petition at 8.)  Although the Supreme Court has not addressed the issue, it has held that Alaska's sex offender registration statute is nonpunitive and, thus, that its retroactive application does not violate the Ex Post Facto Clause. *See Smith v. Doe*, 538 U.S. 84, 105-06 (2003).  Applying similar reasoning, the Texas Court of Criminal Appeals has held that the effect of the 1997 amendments requiring registration for life is

---

[7]One or more of these claims may also be precluded based on the successive requirement; however, because the claims are time-barred, such an analysis is unnecessary.  *See* 28 U.S.C. § 2244(b).

[8]With exceptions, the amendments were expressly made retroactive by the Texas Legislature to a reportable conviction occurring on or after September 1, 1970.  TEX. CODE CRIM. PROC. ANN. art. 62.11 (Vernon Supp. 2004-05).

not so punitive as to transform the statute into a criminal sanction in violation of ex post facto laws. *See Rodriguez v. Texas*, 93 S.W.3d 60, 79 (Tex. Crim. App. 2002); *see also Rieck v. Cockrell*, 321 F.3d 487, 488 (5th Cir.), *cert. denied*, 538 U.S. 1038 (2003) (upholding statutory requirement that a parolee participate in a sex offender counseling program enacted after conviction); *Creekmore v. Attorney Gen. of Tx.*, 341 F.Supp.2d 648, 662-63 (E.D. Tex. 2004) (holding Texas sex offender statute is non-punitive and therefore its application to convicted sex offender did not violate prohibition against ex post facto laws). If registration requirements are nonpunitive, compliance with the requirements cannot constitute double jeopardy or cruel and unusual punishment. *See Rodriguez*, 93 S.W.3d at 69-79; *see also Ex parte Robinson*, 116 S.W.3d 794, 798 (Tex. Crim. App. 2003); *Uresti v. Collier*, No. H-04-3094, 2005 WL 1515386, at *12 (S.D. Tex. June 23, 2005) (not designated for publication). Spurlock's claims that application of the amendments presents equal protection and due process violations are equally without merit. He fails to allege or demonstrate that he is a member of a suspect class or that he is being treated differently than other defendants convicted of aggravated sexual assault after September 1, 1970 for purposes of equal protection. Nor does he allege or demonstrate a liberty or property interest that would entitle him to procedural or substantive due process protection.

Finally, Spurlock's attempt to seek a declaratory ruling cannot be entertained in this habeas proceeding because he asserts jurisdiction only under 28 U.S.C. § 2241. *See Garcia v. Boldin*, 691 F.2d 1172, 1183 (5th Cir. 1982). Therefore, neither federal habeas relief nor declaratory relief is proper with respect this claim.

## H. SUCCESSIVE PETITION

In his fifth ground, Spurlock complains of the denial of his motion for DNA testing based

on newly discovered evidence withheld by the state.  (Petition at 8A-8B.)  28 U.S.C. § 2244(b)

requires dismissal of a claim presented in a second or successive petition filed by a state prisoner

under § 2254 that was or could have been presented in a prior petition unless–

> (A) the application shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

> (B)(i)  the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
> (ii)  the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(1)-(2).  Further, before such a petition is filed in federal district court, the

petitioner must move for authorization to file the petition in the appropriate court of appeals.  *Id.* §

2244(b)(3).

Under chapter 64 of the Texas Code of Criminal Procedure, a state convicting court may

order postconviction DNA testing if certain requirements are satisfied.  TEX. CODE CRIM. PROC.

ANN. art. 64.03(a)(1)(A),(B) (Vernon Supp. 2004-05).  Those requirements include a finding that

the evidence still exists and is in a condition making DNA testing possible and a finding that identity

was or is an issue in the case.  *Id.*  In response to Spurlock's motion for DNA testing, the state

prosecutor filed an affidavit in which he averred that there was no evidence in possession of the state

relating to the case that contained biological material for DNA testing.  (Clerk's R. at 24.)  Based

on this affidavit, the trial court denied the motion.  (*Id.* at 25-26.)  Thereafter, DNA evidence was

apparently discovered by Spurlock's attorney in a private laboratory in Waco, Texas.  (*Id.* at 26.)

The trial court granted Spurlock's motion for rehearing, and a hearing was held.  (*Id.* at 28.)  At the

hearing, Spurlock testified that he did not commit the offense, that the victim, his daugher, made the

charge against him to protect her boyfriend with whom she was having sexual relations, and that testing would show the absence of his DNA, thereby proving that he was not the perpetrator. (Reporter's R. of hearing on motion at 8-16.)

The trial court denied Spurlock's motion after determining that, although evidence still existed that was capable of being tested, identity was not an issue in the case as the victim had identified Spurlock, her father, as the perpetrator.  (Clerk's R. at 34-35.)  The court further determined that Spurlock had failed to establish by a preponderance of the evidence that a reasonable probability existed that he would not have been prosecuted or convicted if exculpatory results had been obtained through DNA testing.  (*Id.*; Reporter's R. of hearing on motion at 24.)  The state appellate court affirmed the trial court's order and the Court of Criminal Appeals denied Spurlock's petition for discretionary review.

Although couched in terms of a *Brady* violation, the instant claim is essentially an attack on Spurlock's conviction.  The claim is therefore characterizable as successive under 2244(b)(2).  *See Kutzner v. Cockrell*, 303 F.3d 333, 338-39 (5th Cir. 2002).  Spurlock argues that his petition falls within the exception under § 2244(b)(2) because he did not learn of the existence of the biological material until the state court proceedings on his motion for DNA testing.  However, nothing in the record indicates that the state prosecutor knowingly withheld knowledge of the existence of the evidence before or during the postconviction DNA proceedings.  Spurlock had sufficient time to investigate the claim and litigate it in his original habeas petition because the basis of his claim–i.e.,the existence of the evidence, was available to him since the time of the original trial

proceedings.[9] *Id.* at 338. Even assuming Spurlock could demonstrate a colorable new constitutional claim that would qualify as a ground for a successive petition under § 2244(b)(2), he must first seek an order authorizing this court to consider the claim from the Fifth Circuit Court of Appeals. 28 U.S.C. § 2244(3). This court is therefore without jurisdiction to consider the claim. *Id.*; *United States v. Orozco-Ramirez*, 211 F.3d 862, 867 (5th Cir. 2000).

## I. RULE 60(B) MOTION

Similarly, Spurlock's rule 60(b) motion in substance is a successive habeas petition, which cannot be filed without precertification by the court of appeals. *See Gonzalez v. Crosby*, ___ U.S. ___, 2005 WL 1469516, at *4 (June 23, 2005); *Kutzner*, 303 F.3d at 338.

## II. RECOMMENDATION

Based on the foregoing discussion, it is recommended that Spurlock's grounds one, two and three be dismissed as time-barred, that ground four be denied, and that ground five and his rule 60(b) motion be dismissed as successive without prejudice to his right to file a motion for leave to file a successive petition in the United States District Court of Appeals for the Fifth Circuit under 28 U.S.C. §2244(b)(3)(A).

## III.  NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's

---

[9]Without commenting on the merits of Spurlock's claims, it is noted that Chapter 64 of the Texas Code of Criminal Procedure, which allows a convicted person to file a motion for DNA testing in the convicting court, did not become effective until April 3, 2001, after Spurlock filed his first federal petition.  Nevertheless, Spurlock waited until March 2003 to file his motion for DNA testing in state court.

proposed findings, conclusions, and recommendation within ten (10) days after the party has been served with a copy of this document.  The court is extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation until August 2, 2005.  The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made.  *See* 28 U.S.C. § 636(B)(1).  Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual finding or legal conclusion accepted by the United States District Judge.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc op. on reh'g); *Carter v. Collins*, 918 F.2d 1198, 1203 (5th Cir. 1990).

## IV.  ORDER

Under 28 U.S.C. § 636, it is ORDERED that each party is granted until August 2, 2005, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation.  It is further ORDERED that if objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED July 12, 2004.

     /s/   Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE